# BARNHART, COMMISSIONER OF SOCIAL SECURITY
## *v.* THOMAS

No. 02–763.   Argued October 14, 2003—Decided November 12, 2003

SCALIA, J., delivered the opinion for a unanimous Court.

*Jeffrey A. Lamken* argued the cause for petitioner. With him on the briefs were *Solicitor General Olson, Assistant Attorney General McCallum, Deputy Solicitor General Kneedler, William Kanter, Wendy M. Keats,* and *Barbara L. Spivak.*

*Abraham S. Alter* argued the cause and filed a brief for respondent.

JUSTICE SCALIA delivered the opinion of the Court.

Under the Social Security Act, the Social Security Administration (SSA) is authorized to pay disability insurance benefits and Supplemental Security Income to persons who have a "disability." A person qualifies as disabled, and thereby eligible for such benefits, "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering

his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U. S. C. §§ 423(d)(2)(A), 1382c(a)(3)(B). The issue we must decide is whether the SSA may determine that a claimant is not disabled because she remains physically and mentally able to do her previous work, without investigating whether that previous work exists in significant numbers in the national economy.

## I

Pauline Thomas worked as an elevator operator for six years until her job was eliminated in August 1995. In June 1996, at age 53, Thomas applied for disability insurance benefits under Title II and Supplemental Security Income under Title XVI of the Social Security Act. See 49 Stat. 622, as amended, 42 U. S. C. § 401 *et seq.* (Title II); as added, 86 Stat. 1465, and as amended, § 1381 *et seq.* (Title XVI). She claimed that she suffered from, and was disabled by, heart disease and cervical and lumbar radiculopathy.

After the SSA denied Thomas's application initially and on reconsideration, she requested a hearing before an Administrative Law Judge (ALJ). The ALJ found that Thomas had "hypertension, cardiac arrythmia, [and] cervical and lumbar strain/sprain." Decision of ALJ 5, Record 15. He concluded, however, that Thomas was not under a "disability" because her "impairments do not prevent [her] from performing her past relevant work as an elevator operator." *Id.,* at 6, Record 16. He rejected Thomas's argument that she is unable to do her previous work because that work no longer exists in significant numbers in the national economy. The SSA's Appeals Council denied Thomas's request for review.

Thomas then challenged the ALJ's ruling in the United States District Court for the District of New Jersey, renewing her argument that she is unable to do her previous work due to its scarcity. The District Court affirmed the ALJ,

concluding that whether Thomas's old job exists is irrelevant under the SSA's regulations. *Thomas* v. *Apfel,* Civ. No. 99–2234 (Aug. 17, 2000). The Court of Appeals for the Third Circuit, sitting en banc, reversed and remanded. Over the dissent of three of its members, it held that the statute unambiguously provides that the ability to perform prior work disqualifies from benefits only if it is "substantial gainful work which exists in the national economy." 294 F. 3d 568, 572 (2002). That holding conflicts with the decisions of four other Courts of Appeals. See *Quang Van Han* v. *Bowen,* 882 F. 2d 1453, 1457 (CA9 1989); *Garcia* v. *Secretary of Health and Human Services,* 46 F. 3d 552, 558 (CA6 1995); *Pass* v. *Chater,* 65 F. 3d 1200, 1206–1207 (CA4 1995); *Rater* v. *Chater,* 73 F. 3d 796, 799 (CA8 1996). We granted the SSA's petition for certiorari. 537 U. S. 1187 (2003).

II

As relevant to the present case, Title II of the Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U. S. C. § 423(d)(1)(A). That definition is qualified, however, as follows:

> "An individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that *he is not only unable to do his previous work but cannot,* considering his age, education, and work experience, *engage in any other kind of substantial gainful work which exists in the national economy. . . .*" § 423(d)(2)(A) (emphases added).

"[W]ork which exists in the national economy" is defined to mean "work which exists in significant numbers either in the

region where such individual lives or in several regions of the country." *Ibid.* Title XVI of the Act, which governs Supplemental Security Income for disabled indigent persons, employs the same definition of "disability" used in Title II, including a qualification that is verbatim the same as § 423(d)(2)(A). See 42 U. S. C. § 1382c(a)(3)(B). For simplicity's sake, we will refer only to the Title II provisions, but our analysis applies equally to Title XVI.

Section 423(d)(2)(A) establishes two requirements for disability. First, an individual's physical or mental impairment must render him "unable to do his previous work." Second, the impairment must also preclude him from "engag[ing] in any other kind of substantial gainful work." The parties agree that the *latter* requirement is qualified by the clause that immediately follows it—"which exists in the national economy." The issue in this case is whether that clause also qualifies "previous work."

The SSA has answered this question in the negative. Acting pursuant to its statutory rulemaking authority, 42 U. S. C. §§ 405(a) (Title II), 1383(d)(1) (Title XVI), the agency has promulgated regulations establishing a five-step sequential evaluation process to determine disability. See 20 CFR § 404.1520 (2003) (governing claims for disability insurance benefits); § 416.920 (parallel regulation governing claims for Supplemental Security Income). If at any step a finding of disability or nondisability can be made, the SSA will not review the claim further. At the first step, the agency will find nondisability unless the claimant shows that he is not working at a "substantial gainful activity." §§ 404.1520(b), 416.920(b). At step two, the SSA will find nondisability unless the claimant shows that he has a "severe impairment," defined as "any impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities." §§ 404.1520(c), 416.920(c). At step three, the agency determines whether the impairment which enabled the claimant to survive step

two is on the list of impairments presumed severe enough to render one disabled; if so, the claimant qualifies. §§ 404.1520(d), 416.920(d). If the claimant's impairment is not on the list, the inquiry proceeds to step four, at which the SSA assesses whether the claimant can do his previous work; unless he shows that he cannot, he is determined not to be disabled.[1] If the claimant survives the fourth stage, the fifth, and final, step requires the SSA to consider so-called "vocational factors" (the claimant's age, education, and past work experience), and to determine whether the claimant is capable of performing other jobs existing in significant numbers in the national economy. §§ 404.1520(f), 404.1560(c), 416.920(f), 416.960(c).[2]

As the above description shows, step four can result in a determination of no disability without inquiry into whether the claimant's previous work exists in the national economy; the regulations explicitly reserve inquiry into the national economy for step five. Thus, the SSA has made it perfectly clear that it does not interpret the clause "which exists in the national economy" in § 423(d)(2)(A) as applying to "previous work."[3] The issue presented is whether this agency interpretation must be accorded deference.

----

[1] The step-four instructions to the claimant read as follows: "If we cannot make a decision based on your current work activity or on medical *facts alone, and you have a severe impairment(s), we then review your* residual functional capacity and the physical and mental demands of the work you have done in the past. If you can still do this kind of work, we will find that you are not disabled." 20 CFR §§ 404.1520(e), 416.920(e) (2003).

[2] In regulations that became effective on September 25, 2003, the SSA amended certain aspects of the five-step process in ways not material to this opinion. The provisions referred to as subsections (e) and (f) in this opinion are now subsections (f) and (g).

[3] This interpretation was embodied in the regulations that first established the five-step process in 1978, see 43 Fed. Reg. 55349 (codified, as amended, at 20 CFR §§ 404.1520 and 416.920 (1982)). Even before enactment of § 423(d)(2)(A) as part of the Social Security Amendments of 1967, the SSA disallowed disability benefits when the inability to work was

As we held in *Chevron U. S. A. Inc.* v. *Natural Resources Defense Council, Inc.,* 467 U. S. 837, 843 (1984), when a statute speaks clearly to the issue at hand we "must give effect to the unambiguously expressed intent of Congress," but when the statute "is silent or ambiguous" we must defer to a reasonable construction by the agency charged with its implementation. The Third Circuit held that, by referring first to "previous work" and then to "*any other* kind of substantial gainful work which exists in the national economy," 42 U. S. C. § 423(d)(2)(A) (emphasis added), the statute unambiguously indicates that the former is a species of the latter. "When," it said, "a sentence sets out one or more specific items followed by 'any other' and a description, the specific items must fall within the description." 294 F. 3d, at 572. We disagree. For the reasons discussed below, the interpretation adopted by SSA is at least a reasonable construction of the text and must therefore be given effect.

The Third Circuit's reading disregards—indeed, is precisely contrary to—the grammatical "rule of the last antecedent," according to which a limiting clause or phrase (here, the relative clause "which exists in the national economy") should ordinarily be read as modifying only the noun or phrase that it immediately follows (here, "any other kind of substantial gainful work"). See 2A N. Singer, Sutherland on Statutory Construction § 47.33, p. 369 (6th rev. ed. 2000) ("Referential and qualifying words and phrases, where no contrary intention appears, refer solely to the last antecedent"). While this rule is not an absolute and can assuredly be overcome by other indicia of meaning, we have said that construing a statute in accord with the rule is "quite sensible as a matter of grammar." *Nobelman* v. *American Savings Bank,* 508 U. S. 324, 330 (1993). In *FTC* v. *Mandel Brothers, Inc.,* 359 U. S. 385 (1959), this Court employed the rule to interpret a statute strikingly similar in structure to

caused by "technological changes in the industry in which [the claimant] has worked." 20 CFR § 404.1502(b) (1961).

§ 423(d)(2)(A)—a provision of the Fur Products Labeling Act, 15 U. S. C. § 69, which defined " 'invoice' " as " 'a written account, memorandum, list, or catalog . . . transported or delivered to a purchaser, consignee, factor, bailee, correspondent, or agent, *or any other person who is engaged in dealing commercially in fur products or furs.*' " 359 U. S., at 386 (quoting 15 U. S. C. § 69(f)) (emphasis added). Like the Third Circuit here, the Court of Appeals in *Mandel Brothers* had interpreted the phrase " 'any other' " as rendering the relative clause (" 'who is engaged in dealing commercially' ") applicable to all the specifically listed categories. 359 U. S., at 389. This Court unanimously reversed, concluding that the "limiting clause is to be applied only to the last antecedent." *Id.*, at 389, and n. 4 (citing 2 J. Sutherland, Statutory Construction § 4921 (3d ed. 1943)).

An example will illustrate the error of the Third Circuit's perception that the specifically enumerated "previous work" "must" be treated the same as the more general reference to "any other kind of substantial gainful work." 294 F. 3d, at 572. Consider, for example, the case of parents who, before leaving their teenage son alone in the house for the weekend, warn him, "You will be punished if you throw a party or engage in any other activity that damages the house." If the son nevertheless throws a party and is caught, he should hardly be able to avoid punishment by arguing that the house was not damaged. The parents proscribed (1) a party, and (2) any other activity that damages the house. As far as appears from what they said, their reasons for prohibiting the home-alone party may have had nothing to do with damage to the house—for instance, the risk that underage drinking or sexual activity would occur. And even if their only concern was to prevent damage, it does not follow from the fact that the same interest underlay both the specific and the general prohibition that proof of impairment of that interest is required for both. The parents, foreseeing that assessment of whether an activity had in fact "damaged" the house

could be disputed by their son, might have wished to preclude all argument by specifying and categorically prohibiting the one activity—hosting a party—that was most likely to cause damage and most likely to occur.

The Third. Circuit suggested that interpreting the statute as does the SSA would lead to "absurd results." *Ibid.* See also *Kolman* v. *Sullivan,* 925 F. 2d 212, 213 (CA7 1991) (the fact that a claimant could perform a past job that no longer exists would not be "a rational ground for denying benefits"). The court could conceive of "no plausible reason why Congress might have wanted to deny benefits to an otherwise qualified person simply because that person, although unable to perform any job that actually exists in the national economy, could perform a previous job that no longer exists." 294 F. 3d, at 572–573. But on the very next page the Third Circuit conceived of *just* such a plausible reason, namely, that "in the vast majority of cases, a claimant who is found to have the capacity to perform her past work also will have the capacity to perform other types of work." *Id.,* at 574, n. 5. The conclusion which follows is that Congress could have determined that an analysis of a claimant's physical and mental capacity to do his previous work would "in the vast majority of cases" serve as an effective and efficient administrative proxy for the claimant's ability to do *some* work that does exist in the national economy. Such a proxy is useful because the step-five inquiry into whether the claimant's cumulative impairments preclude him from finding "other" work is very difficult, requiring consideration of "each of th[e] [vocational] factors and . . . an individual assessment of each claimant's abilities and limitations," *Heckler* v. *Campbell,* 461 U. S. 458, 460–461, n. 1 (1983) (citing 20 CFR §§ 404.1545–404.1565 (1982)). There is good reason to use a workable proxy that avoids the more expansive and individualized step-five analysis. As we have observed, "[t]he Social Security hearing system is 'probably the largest adjudicative

agency in the western world.' . . . The need for efficiency is self-evident." 461 U. S., at 461, n. 2 (citation omitted).

The Third Circuit rejected this proxy rationale because it would produce results that "may not always be true, and . . . may not be true in this case." 294 F. 3d, at 576. That logic would invalidate a vast number of the procedures employed by the administrative state. To generalize is to be imprecise. Virtually *every* legal (or other) rule has imperfect applications in particular circumstances. Cf. *Bowen* v. *Yuckert*, 482 U. S. 137, 157 (1987) (O'CONNOR, J., concurring) ("To be sure the Secretary faces an administrative task of staggering proportions in applying the disability benefits provisions of the Social Security Act. Perfection in processing millions of such claims annually is impossible"). It is true that, under the SSA's interpretation, a worker with severely limited capacity who has managed to find easy work in a declining industry could be penalized for his troubles if the job later disappears. It is also true, however, that under the Third Circuit's interpretation, impaired workers in declining or marginal industries who cannot do "other" work could simply refuse to return to their jobs—even though the jobs remain open and available—and nonetheless draw disability benefits. The proper *Chevron* inquiry is not whether the agency construction can give rise to undesirable results in some instances (as here *both* constructions can), but rather whether, in light of the alternatives, the agency construction is reasonable. In the present case, the SSA's authoritative interpretation certainly satisfies that test.

We have considered respondent's other arguments and find them to be without merit.

\* \* \*

We need not decide today whether § 423(d)(2)(A) compels the interpretation given it by the SSA. It suffices to conclude, as we do, that § 423(d)(2)(A) does not unambiguously require a different interpretation, and that the SSA's regula-

tion is an entirely reasonable interpretation of the text. The judgment of the Court of Appeals is reversed.

*It is so ordered.*