NONPRECEDENTIAL DISPOSITION
To be cited only in accordance with
Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Argued July 7, 2010
Decided August 12, 2010

**Before**

JOEL M. FLAUM, *Circuit Judge*

ILANA DIAMOND ROVNER, *Circuit Judge*

JOHN DANIEL TINDER, *Circuit Judge*

No. 10-1015

| | |
|---|---|
| JOHN HENRY HOY, | Appeal from the United States District |
| *Plaintiff-Appellant*, | Court for the Northern District of Illinois, Eastern Division. |
| *v.* | |
| | No. 08 C 4617 |
| MICHAEL J. ASTRUE, | |
| Commissioner of Social Security, | Susan E. Cox, |
| *Defendant-Appellee*. | *Magistrate Judge*. |

**O R D E R**

An administrative law judge denied John Hoy's disability claims, and the district court affirmed that decision. Hoy appeals. We affirm the judgment of the district court.

Hoy, now 55 years old, has an employment history consisting mostly of jobs involving heavy labor—in a steel mill, in a fish warehouse, as a day laborer—and one stint as an unarmed security guard, during which he made rounds of a building as a night watchman. He applied for Disability Insurance Benefits and Supplemental Security Income in September 2005, alleging that he had been disabled since August 1999 by abdominal pain from stab wounds; pain in his back and legs; a loss of sight in his left eye; and a stye on his

right eye.  His applications were denied initially and upon reconsideration.  In June 2007 he received a hearing before an administrative law judge ("ALJ").

His grim medical history suggests that Hoy has a knack for finding trouble.  In 1997 his girlfriend stabbed him several times in his back and his left deltoid.  Following treatment in an emergency room, Hoy returned to the hospital a few days later complaining of weakness and numbness in his left arm.  He was told to take Tylenol for any pain and given permission to resume regular activities.  Hoy was stabbed again by his girlfriend—it is not clear whether this was the same girlfriend—in 1999, this time in the abdomen; he needed surgery to repair injuries to his duodenum and colon.  Later that year, after he complained of vomiting blood and abdominal pain, he was diagnosed with a small bowel obstruction.  He underwent surgery again; an examination the next month showed that his abdomen was normal, his wound was healing nicely, and that he was doing well.

Hoy was hit by a car in 2000.  Doctors observed tenderness in his back, neck, chest, and abdomen, but x-rays were negative.  He was discharged and prescribed Motrin and Flexeril, a muscle relaxant.  Hoy was ambulatory when discharged, and he was cleared to walk and resume regular activities.

One month later Hoy suffered an injury to his right leg, where he was struck several times with a baseball bat, and returned to the hospital.  A doctor observed that he had a full range of motion in his knee and ankle.  X-rays showed no definite fracture; the doctor diagnosed a contusion.  Two months later, Hoy broke his right leg during an altercation and underwent surgery, during which doctors installed a small titanium rod in his leg.  He was discharged three days later with crutches, a knee immobilizer, and pain medication.  Later that day—after Hoy drank four 40-ounce bottles of beer and several glasses of wine, and apparently also used intravenous drugs—he removed the knee immobilizer, walked on his right leg, fell down, and was re-admitted to the hospital.  He was given a cast to protect his leg and discharged the next day with pain medication.

Later in 2000, two men attacked and punched Hoy, sending him to the hospital with swelling over his left jaw, a loose tooth, a cut lip, and tenderness in his back.  He was admitted for observation and then discharged with instructions to take Motrin for his pain.

Hoy's eye problems started in 2002, when he received antibiotics for a stye on his right eye.  The next year a chalazion—a lump in the eyelid—developed on his right eye; he was prescribed Motrin and referred to the hospital's eye clinic.  Hoy received antibiotics again in 2004 to treat another stye on his right eye.  Later that year he was hit by a baseball bat in the left eye, left ribs, left arm, and left calf.  Hoy reported that his vision was blurry in his left eye.  His left eye was sutured and he was diagnosed with fractured ribs.  In 2005

Hoy had another chalazion on his right eye, for which the treating physician prescribed Motrin and told him to stop drinking alcohol.

After Hoy applied for benefits, Dr. Scott Kale examined him at the request of the state Bureau of Disability Determination Services. Hoy said he had intermittent pain in his right leg that required him to use a cane, but he did not bring one to the exam. Kale noted that Hoy walked with a mild limp, but could walk without difficulty for several hundred feet. He concluded that Hoy did not need a cane or assistive device to walk. Kale also noted that Hoy was blind in his left eye and that he had intermittent mild lower back pain. Kale's clinical impressions were that Hoy had mild hypertension; a history of abdominal injury; a history of fractures in his right leg, resulting in a mild limp; and a history of back pain, with a normal range of motion and without radiating pain.

Dr. Marion Panepinto performed a residual functional capacity ("RFC") assessment of Hoy for the state agency. Panepinto's opinion was that Hoy could occasionally lift or carry 50 pounds, frequently lift or carry 25 pounds, stand or walk for about six hours in an eight-hour workday, and sit for about six hours. Panepinto also concluded that Hoy could occasionally climb stairs or ramps and frequently stoop, kneel, crouch, or crawl. Panepinto found that Hoy had limited depth perception and field of vision because he was blind in his left eye, but that his visual impairment was not severe because he had 20/25 vision in his right eye. State agency physician Arjmand Towfig affirmed Panepinto's assessment.

At a hearing before the ALJ, Hoy testified that he could no longer work as a security guard because he could not turn or look out of his left eye, and because going up stairs on his rounds was too painful. He said that he had only worked "[m]aybe a couple of days" as a day laborer since stopping work as a security guard, but that he had not done a full day of work since 2000 because he was incapable of working eight hours.

Hoy testified that he was not seeing any doctors regularly, but went to a clinic to get pills for the pain in his back and leg. He said he had some vision in his left eye, but saw only shadows. He felt constant pain in his lower back, and the pain worsened when he tried to do any physical activity or pick up something "too heavy," which he explained was anything over 15 or 20 pounds. Hoy said the pain in his right leg came and went, but increased when he climbed up and down stairs. He testified that he could walk in reasonable comfort on flat ground for about half a mile, or four city blocks. He also testified that he could sit or stand comfortably for about an hour before his leg bothered him. To relieve his back and leg pain, he wore a back brace and usually took extra-strength Tylenol, although he would get Tylenol 3 when he saw a doctor.

The ALJ posed a hypothetical question to the vocational expert ("VE") at the hearing: Could someone of Hoy's age and vocational background perform any of his past relevant work if he had limited depth perception and no left peripheral vision, and could occasionally lift 20 pounds; frequently lift 10 pounds and push or pull 20 pounds; stand, walk, or sit for six hours in an eight-hour day; and climb occasionally? According to the VE, those restrictions would not prevent the person from working as an unarmed security guard. In response to a question from Hoy's attorney, the VE testified that the individual could still work as a security guard if he could only occasionally push or pull 20 pounds.

The ALJ used the required five-step analysis to evaluate Hoy's claim, *see* 20 C.F.R. §§ 404.1520, 416.920, and concluded that he was not disabled. The ALJ first found that Hoy had not performed substantial gainful activity since the alleged onset date of August 31, 1999 (step one), and that he had three severe impairments: blindness in his left eye, lower back pain, and residual pain from his formerly-fractured right leg (step two). But the ALJ found that Hoy did not have an impairment or combination of impairments that met or equaled any of the impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1 (step three), and that he could perform past relevant work as an unarmed security guard (step four).

After the Appeals Council declined to review the ALJ's decision, Hoy filed this action in the district court. A magistrate judge, presiding with the parties' consent, issued a comprehensive and thorough opinion granting judgment for the Commissioner.

We uphold an ALJ's decision if it is supported by substantial evidence, i.e., relevant evidence that a reasonable person might accept as adequate. *Schaaf v. Astrue*, 602 F.3d 869, 874 (7th Cir. 2010). Although an ALJ need not address every piece of evidence, he must provide a "logical bridge" between the evidence and his conclusions. *Terry v. Astrue*, 580 F.3d 471, 475 (7th Cir. 2009).

Although the ALJ found at step two that Hoy suffered from three severe impairments, Hoy contends that the ALJ erred by not mentioning many of his other conditions and injuries, including his various stab wounds and fractures; his bowel resection; a corneal abrasion in his right eye; a chalazion on his right eye; pain in his chest, eye, and back; and hypertension. Hoy suggests that these conditions were severe because they could not be improved. But whether a condition or injury is a severe impairment does not turn on whether it can be improved; an impairment, or combination of impairments, is severe if it significantly limits the claimant's physical or mental ability to perform basic work activities. *See* 20 C.F.R. §§ 404.1520(c), 416.920(c); *Barnhart v. Thomas*, 540 U.S. 20, 24 (2003). Hoy points to nothing in the record to support a finding that the conditions or injuries not mentioned by the ALJ met that standard.

Hoy challenges the ALJ's finding at step three that he did not suffer from an impairment or combination of impairments that met or equaled any of those listed. But Hoy concedes that his impairments do not meet or equal any of the listed impairments. At the hearing, his attorney told the ALJ that he "couldn't find a listing that applied" to Hoy:

> . . . [Hoy] does not seem to come into all of the, all of the criteria that must be there in order to pigeon hole him into one of the rules. I cannot do that. I will candidly tell you as an officer of the court. I just don't see anything that, that, where he's on all fours, but I do think that, and I believe the fourth step in the descending criteria to determine disability, he should be found disabled under that.

A.R. 34-35. Hoy's attorney conceded as much again at oral argument and expressed the view that Hoy should be found disabled under "the grids," referring to the Medical-Vocational Guidelines, 20 C.F.R. Pt. 404, Subpt. P, App. 2, which can come into play at step five of an ALJ's analysis.

Nevertheless, Hoy seeks to argue—as an alternative to the contention that he is disabled under the grids—that the ALJ committed reversible error at step three finding that he did not meet or equal listing 1.06 (fractures of the femur, tibia, pelvis, or one or more of the tarsal bones). Here Hoy's argument founders, because—as the Commissioner points out—one of the requirements for satisfying listing 1.06 is an inability to ambulate effectively, such that the claimant needs a hand-held assistive device. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1, §§ 1.00B2b, 1.06. Hoy cites no medical evidence to show that he cannot ambulate effectively. Although he told Drs. Kane and Panepinto that he used a cane, he did not bring one to either exam, and both doctors observed him walking without difficulty, aside from a mild limp.

Hoy also challenges the ALJ's determination at step four that his statements about the intensity, persistence, and limiting effects of his symptoms were only partially credible. Contrary to Hoy's assertions, however, the ALJ here supported his credibility determination with evidence in the record, as he was required to do. *See* SSR 96-7p. The ALJ noted that there were no clinical or objective findings to support Hoy's claim that his back pain was disabling. The ALJ pointed to Dr. Kale's observation that Hoy walked with a mild limp but did not suffer from radiating pain and exhibited a normal range of motion. The ALJ also cited Hoy's testimony that the pain in his leg was intermittent—worsening when the weather changed, or when he went up or down stairs—and that he could walk four blocks without stopping, sit for an hour, and stand for an hour. Because the ALJ reasonably supported his finding that Hoy was only partially credible about his symptoms, we cannot say that the ALJ's credibility determination was patently wrong. *See Schaaf*, 602 F.3d at 875.

Hoy next challenges the ALJ's finding at step four that his RFC allowed him to do his past relevant work. *See* 20 C.F.R. § 404.1520(a)(4), (f); 20 C.F.R. § 416.920(a)(4), (f). Hoy first argues that the ALJ erred by not considering the limiting effect of all of his impairments—severe and otherwise—in combination. *See* 20 C.F.R. §§ 404.1523, 416.923; *Denton v. Astrue*, 596 F.3d 419, 423 (7th Cir. 2010). Specifically, Hoy contends that at step four the ALJ ignored the combined effect of his multiple fractures, hypertension, and arthritis on his ability to work. Hoy, however, only speculates about the effect of these conditions on him; he suggests, for example, that hypertension would increase the pain in his right leg, and that many other limitations could be posited with his conditions.

The ALJ *did* consider the effect of Hoy's multiple fractures: He noted that Hoy's back pain was not surprising given his "multiple trauma," and as part of his RFC finding he concluded—after taking into account "reasonable discomfort caused by his multiple traumas"—that Hoy would only occasionally be able to climb. As for hypertension and arthritis, the record is bare regarding any limitations they may have caused, so the ALJ could not have found any limitations stemming from them. *See* SSR 96-8p. Hoy did not mention hypertension or arthritis in his testimony before the ALJ, and although Dr. Kale found that Hoy had mild hypertension, the record contains no suggestion that it limited him. Nor is there any indication in the record that Hoy suffers from arthritis. And we need not consider Hoy's speculative limitations derived from those conditions, which he did not offer in testimony and are unsupported in the record. *See* 20 C.F.R. §§ 404.1512, 416.912; *Schmidt v. Barnhart*, 395 F.3d 737, 745-46 (7th Cir. 2005).

Hoy also maintains that the finding at step four was flawed because the ALJ's hypothetical question to the VE did not include his inability to focus or concentrate. It is true that an ALJ's question must include all limitations supported by medical evidence in the record. *Stewart v. Astrue*, 561 F.3d 679, 684 (7th Cir. 2009). However, Hoy never testified that he had difficulty concentrating, and no evidence of such a problem is in the record.

Because Hoy has not shown that the ALJ erred in finding at step four that he was not disabled, we need not consider his argument that he should be found disabled under the grids at step five. We AFFIRM the district court's judgment.