Slip Op. 06-86

UNITED STATES COURT OF INTERNATIONAL TRADE

_____
                                        :
MERCK & CO., INC.,                      :
                                        :
              Plaintiff,                :
                                        :
                                        :       Before: Judith M. Barzilay, Judge
       v.                               :       Court No. 02-00759
                                        :
UNITED STATES,                          :
                                        :
              Defendant.                :
_____:

OPINION

[Plaintiff's motion for summary judgment is denied, and Defendant's motion for summary judgment is granted.]

Dated: June 6, 2006

*Galvin & Mlawski* (*John J. Galvin*) for Plaintiff Merck & Co., Inc.

*Peter D. Keisler*, Assistant Attorney General; (*Barbara S. Williams*) Attorney in Charge, International Trade Field Office; (*Edward F. Kenny*) Civil Division, Commercial Litigation Branch, United States Department of Justice; *Chi S. Choy*, Office of the Assistant Chief Counsel, International Trade Litigation, United States Customs and Border Protection, of counsel, for Defendant United States.

       **BARZILAY, JUDGE:** Plaintiff Merck & Co., Inc. ("Merck"), has brought this action against the United States to contest Customs' denial of its timely-filed protest claim for "substitution unused merchandise duty drawback" on exports of substitute, fungible non-NAFTA origin goods to Canada and Mexico. *See* Pl.'s Mot. Summ. J. 1. Plaintiff asserts that pursuant to the relevant statutes, 19 U.S.C. §§ 1313(j)(2) & (4), 3333(a) (2000), its shipments of the merchandise in question to Canada and Mexico constitute "exports" and therefore are not subject to NAFTA drawback restrictions; Defendant contends otherwise. Both parties have filed

motions for summary judgment.  For the reasons given below, Defendant's motion for summary

judgment is granted, and Plaintiff's motion for summary judgment is denied.

## I. Procedural History

### A. The Statutory Framework for Duty Drawback

Duty drawback provisions traditionally permit importers to obtain duty refunds upon

exportation for articles produced with merchandise imported into the United States, *see* 19

U.S.C. § 1313(a),[1] or produced with substitute merchandise, domestic or imported, of the same

kind as the imported merchandise ("substitution drawback"), *see* § 1313(b).[2]  In 1980, Congress

amended the laws to allow drawback on imported merchandise not used in the United States and

exported in the same condition as when it was imported ("unused merchandise drawback").  *See*

---

[1]In relevant part, the statute states that:
"(a) Articles made from imported merchandise
Upon the exportation . . . of articles manufactured or produced in the United States with the use
of imported merchandise, . . . the full amount of the duties paid upon the merchandise so used
shall be refunded as drawback . . . ."
19 U.S.C. § 1313(a).

[2]In relevant part, the statute states that:
(b) Substitution for drawback purposes
If imported duty-paid merchandise and any other merchandise (whether imported
or domestic) of the same kind and quality are used in the manufacture or
production of articles . . . , there shall be allowed upon the exportation . . . of any
such articles, notwithstanding the fact that none of the imported merchandise may
actually have been used in the manufacture or production of the exported . . .
articles, an amount of drawback equal to that which would have been allowable
had the merchandise used therein been imported, but only if those articles have
not been used prior to such exportation . . . .
19 U.S.C. § 1313(b).

§ 1313(j)(1) (1980).[3]  In 1984, an additional modification legalized substitution unused

merchandise drawback.  *See* § 1313(j)(3) (1984).[4]

Passage of the North American Free Trade Agreement Implementation Act

("NAFTAIA"), Pub. L. No. 103-182, 107 Stat. 2060-2164 (1993), codified at 19 U.S.C.

§§ 3301-3473 (2000), substantially amended the duty drawback system.  Crucially, the

NAFTAIA added subsection 1313(j)(4) to the statute and thereby eliminated "substitution unused

merchandise drawback" for exports to Mexico and Canada, except for merchandise delineated in

§ 3333(a)(1)-(8).  *See* §§ 1313(j)(2) & (4), 3333(a) (2000).  These exceptions were included in

---

[3]The relevant part of the subsection read:
(j) same condition drawback.
(1) If imported merchandise, on which was paid any duty, tax, or fee imposed under Federal law because of its importation–,
(A) is . . . ,
(i) exported in the same condition as when imported . . . ; and
(B) is not used within the United States before such exportation . . . ; then upon such exportation . . . the amount of each such duty, tax, and fee so paid shall be refunded as drawback.
. . . .
19 U.S.C. § 1313(j) (1980).

[4]Today the modified text of this subsection falls under paragraph (j)(2).  This subsection in relevant part read:
(3) If there is, with respect to imported merchandise on which was paid any duty, tax, or fee imposed under Federal law because of its importation, any other merchandise (whether imported or domestic) that –
(A) is fungible with such imported merchandise;
(B) is . . . exported . . . ;
(C) before such exportation . . . –
(i) is not used within the United States, and
(ii) is in the possession of the party claiming drawback under this paragraph; and
(D) is in the same condition at the time of exportation . . . as was the imported merchandise at the time of its importation; then upon the exportation . . . of such other merchandise the amount of each such duty, tax, and fee paid regarding the imported merchandise shall be refunded as drawback . . . .
19 U.S.C. § 1313(j)(3) (1984).

the statute to preserve certain manufacturing and specialized duty deferral programs. H.R. Rep.

No. 103-361(I), at 39 (1993), *reprinted in* 1993 U.S.C.C.A.N. 2552, 2589.

## B. The Present Case

On May 25, 1993, Merck imported 35 kilograms of the chemical compound N-

(aminosulfonyl)-3-(((2-((diaminomethylene) amino)-4-thiazolyl) methyl) thio) propanimidamide,

otherwise known as Famotidine, from its manufacturer Yamanouchi Ireland Co., Ltd., of Dublin,

Ireland, at a duty rate of 6.9% *ad valorem.* During July and August 1995, Merck imported duty-

free[5] an additional 1,195 kilograms of Famotidine. On July 13 and August 4, 1995, the firm then

exported 35 kilograms of Famotidine from the 1995 transactions ("the substitute merchandise")

to Mexico and Canada, respectively, hoping to secure a substitution unused merchandise

drawback claim based upon the 35 kilograms of Famotidine that it imported in 1993 ("the

designated merchandise") pursuant to the NAFTA drawback exception in § 3333(a)(2).[6] *See*

Pl.'s Mot. Summ. J. 7-8, 13; Def.'s Mot. Summ. J. & Resp. Def.'s Mot. Summ. J. 2-3.

---

[5]Pursuant to the Uruguay Round Trade Agreement, tariffs on pharmaceutical products were eliminated effective January 1, 1995.

[6]The exception reads:
(2) A good exported to a NAFTA country in the same condition as when imported into the United States. For purposes of this paragraph– (A) processes such as testing, cleaning, repacking, or inspecting a good, or preserving it in its same condition, shall not be considered to change the condition of the good, and (B) except for a good referred to in paragraph 12 of section A of Annex 703.2 of the Agreement that is exported to Mexico, if a good described in the first sentence of this paragraph is commingled with fungible goods and exported in the same condition, the origin of the good may be determined on the basis of the inventory methods provided for in the regulations implementing this title.
19 U.S.C. § 3333(a)(2).

Customs denied Merck's drawback claim, asserting that statute prohibits "substitution unused merchandise drawback" for exports to NAFTA countries and that Merck's claim did not fit into any of the eight exceptions in § 3333(a). Customs liquidated the entries on July 31, 1998. *See* Def.'s Mot. Summ. J. & Resp. Pl.'s Mot. Summ. J. 3; Def.'s Statement Material Facts 1. Merck subsequently filed a protest, which Customs denied on June 14, 2002. Customs reasoned that

> the goods exported to Canada and Mexico [were] not the imported goods upon which the drawback claim [was] based, but [were] the substitute goods. The designated imported merchandise, which [was] not exported, [was] the basis for the drawback claim. As it [was] not exported, it [was] not merchandise described in paragraph (2) of section 3333(a) . . . and cannot be the basis for a claim under § 1313(j)(2).

HQ 228781 of June 20, 2002, at *2. Merck then filed the present action in this Court, which has jurisdiction over this matter pursuant to 28 U.S.C. § 1581(a).

## II. Standard of Review

This Court will grant a party summary judgment when "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." USCIT R. 56(c); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986); *Avia Group Int'l, Inc. v. L.A. Gear Cal., Inc.*, 853 F.2d 1557, 1560 (Fed. Cir. 1988). In its evaluation, "[t]he Court may not resolve or try factual issues." *Phone-Mate, Inc. v. United States*, 12 CIT 575, 577, 690 F. Supp. 1048, 1050 (1988), *aff'd*, 867 F.2d 1404 (Fed. Cir. 1989). To determine whether there exists a genuine issue of material fact, the court must view the proffered evidence "in the light most favorable to the party opposing the motion, with doubts resolved in favor of the opponent." *Dow Agroscis. LLC v. Crompton Corp.*, No. 2005-1524, Slip. Op. at *4 (Fed. Cir. May 5, 2006) (not reported in F. Supp.) (quoting *Chiuminatta Concrete Concepts, Inc. v. Cardinal Indus., Inc.*,

145 F.3d 1303, 1307 (Fed. Cir.1998)) (quotations omitted). Absent a finding of "disputes over

facts that might affect the outcome of the suit under the governing law," summary judgment will

be entered for the moving party. *Anderson*, 477 U.S. at 248.

### III. Discussion

### A. Statutory Interpretation

This case centers on the parties' conflicting interpretations of 19 U.S.C. § 1313(j)(4)(A)[7]

when viewed in conjunction with §§ 1313(j)(2) and 3333(a).[8] When undertaking an

---

[7]At the time relevant in this case, § 1313(j)(4)(A) was codified as § 1313(j)(4). Upon the passage of the U.S.-Chile Free Trade Agreement Implementation Act, paragraph (4) became (4)(A). For convenience, this opinion will refer to this paragraph as (4)(A).

[8]Section 1313(j), in relevant part and at all relevant times, provides:
(j) Unused merchandise drawback
. . . .
(2) Subject to paragraph (4), if there is, with respect to imported merchandise on which was paid any duty, tax, or fee imposed under Federal law upon entry or importation, any other merchandise (whether imported or domestic), that–
(A) is commercially interchangeable with such imported merchandise;
(B) is, before the close of the 3-year period beginning on the date of importation of the imported merchandise, either exported or destroyed under customs supervision; and
(C) before such exportation or destruction–
(i) is not used within the United States, and
(ii) is in the possession of, including ownership while in bailment, in leased facilities, in transit to, or in any other manner under the operational control of, the party claiming drawback under this paragraph, if that party–
(I) is the importer of the imported merchandise,
. . . .
then, notwithstanding any other provision of law, upon the exportation or destruction of such other merchandise the amount of each such duty, tax, and fee paid regarding the imported merchandise shall be refunded as drawback under this subsection, but in no case may the total drawback on the imported merchandise, whether available under this paragraph or any other provision of law or any combination thereof, exceed 99 percent of that duty, tax, or fee.
. . . .
(4)(A) Effective upon the entry into force of the North American Free Trade

Agreement, the exportation to a NAFTA country, as defined in section 2(4) of the North American Free Trade Agreement Implementation Act [19 U.S.C.A. § 3301(4)], of merchandise that is fungible with and substituted for imported merchandise, other than merchandise described in paragraphs (1) through (8) of section 203(a) of that Act [19 U.S.C.A. § 3333(a)], shall not constitute an exportation for purposes of paragraph (2).

. . . .

19 U.S.C. § 1313(j) (emphasis added). Section 3333 in relevant part reads:

(a) "Good subject to NAFTA drawback" defined

For purposes of this Act and the amendments made by subsection (b) of this section, the term "good subject to NAFTA drawback" means any imported good other than the following:

(1) A good entered under bond for transportation and exportation to a NAFTA country.

(2) A good exported to a NAFTA country in the same condition as when imported into the United States. For purposes of this paragraph–

(A) processes such as testing, cleaning, repacking, or inspecting a good, or preserving it in its same condition, shall not be considered to change the condition of the good, and

(B) except for a good referred to in paragraph 12 of section A of Annex 703.2 of the Agreement that is exported to Mexico, if a good described in the first sentence of this paragraph is commingled with fungible goods and exported in the same condition, the origin of the good may be determined on the basis of the inventory methods provided for in the regulations implementing this title.

(3) A good–

(A) that is–

(i) deemed to be exported from the United States,

(ii) used as a material in the production of another good that is deemed to be exported to a NAFTA country, or

(iii) substituted for by a good of the same kind and quality that is used as a material in the production of another good that is deemed to be exported to a NAFTA country, and

(B) that is delivered–

(i) to a duty-free shop,

(ii) for ship's stores or supplies for ships or aircraft, or

(iii) for use in a project undertaken jointly by the United States and a NAFTA country and destined to become the property of the United States.

(4) A good exported to a NAFTA country for which a refund of customs duties is granted by reason of–

(A) the failure of the good to conform to sample or specification, or

(B) the shipment of the good without the consent of the consignee.

(5) A good that qualifies under the rules of origin set out in section 3332 of this

examination of a statute's meaning, a court must first look to "the statutory language itself [as]

the best indication of congressional intent." *Alaskan Arctic Gas Pipeline Co. v. United States*,

831 F.2d 1043, 1046 (Fed. Cir. 1987); *see United States v. Azeem*, 946 F.2d 13, 17 (2d Cir.

1991); *United States v. Kung Chen Fur Corp.*, 188 F.2d 577, 583-84 (C.C.P.A. 1951). During

this initial textual analysis, "the entire context of the statute must be considered and every effort

made to give full force and effect to all language contained therein." *Dart Exp. Corp. v. United*

*States*, 43 C.C.P.A. 64, 74 (1956) (citations omitted) (not reported in F.2d); *see Platt v. Union*

*Pac. R.R. Co.*, 99 U.S. 48, 58-59 (1878) ("Congress is not to be presumed to have used words for

---

title that is–
(A) exported to a NAFTA country,
(B) used as a material in the production of another good that is exported to a
NAFTA country, or
(C) substituted for by a good of the same kind and quality that is used as a
material in the production of another good that is exported to a NAFTA country.
(6) A good provided for in subheading 1701.11.02 of the HTS that is–
(A) used as a material, or
(B) substituted for by a good of the same kind and quality that is used as a
material, in the production of a good provided for in existing Canadian tariff item
1701.99.00 or existing Mexican tariff item 1701.99.01 or 1701.99.99 (relating to
refined sugar).
(7) A citrus product that is exported to Canada.
(8) A good used as a material, or substituted for by a good of the same kind and
quality that is used as a material, in the production of–
(A) apparel, or
(B) a good provided for in subheading 6307.90.99 (insofar as it relates to furniture
moving pads), 5811.00.20, or 5811.00.30 of the HTS, that is exported to Canada
and that is subject to Canada's most-favored-nation rate of duty upon importation
into Canada.

Where in paragraph (6) a good referred to by an item is described in parentheses
following the item, the description is provided for purposes of reference only.
      . . . .
19 U.S.C. § 3333.

no purpose. . . . [N]o words are to be treated as surplusage or as repetition."); *Faus Group, Inc. v.*

*United States*, 28 CIT \_\_\_, \_\_\_, 358 F. Supp. 2d 1244, 1261 (2004).

> [I]f the language of a statute is clear and plain, its obvious meaning must be adopted by the court[]; yet, in the presence of ambiguity, the fact that inconsistent or absurd results may flow from one construction and not from another will often lead the court to adopt the latter as the most likely expressing the legislative intent.

*Cohn & Rosenberger v. United States*, 4 Ct. Cust. 378, 383 (Ct. Cust. App. 1913).  "However, if

the bare language of the statute fails to provide adequate guidance or if a literal interpretation of

the statute would lead to an incongruous result," the court must turn to the statute's

administrative and legislative history to glean Congress' purpose in enacting the statute.  *Alaskan*

*Arctic Gas Pipeline Co.*, 831 F.2d at 1046; *see Kung Chen Fur Corp.*, 188 F.2d at 583-84.

**B. The Language of the Statutes in Question**

The court notes that the statutory scheme at issue is inartfully drafted, not least because

portions of it lie within the laws governing NAFTA, while other parts are embedded within the

statutes on duty drawback.  Subsection (j)(2) of § 1313 establishes the legal framework for

substitution unused merchandise drawback, subject to the limitations set forth in paragraph (4).

Paragraph (4)(A) states that "merchandise that is fungible with and substituted for imported

merchandise" exported to NAFTA countries – Mexico and Canada – generally does not qualify

for duty drawback.  § 1313(j)(4)(A).  In other words, subsection (j)(4)(A) precludes "substitution

unused merchandise drawback" for merchandise exported to NAFTA countries.  This

prohibition, though, is subject to the exceptions listed in "paragraphs (1) through (8)" of §

3333(a).  *Id.*

However, the parties disagree over whether the dependant clause in paragraph (4)(A) that cross-references the § 3333(a) exceptions ("the dependant clause") modifies the first or second "merchandise" in the sentence. Merck claims that the dependant clause modifies the first "merchandise" in paragraph (A) and therefore exempts "the fungible substitute exports" from the substitution unused merchandise drawback restrictions. Pl.'s Mot. Summ. J. 2. To fall within the substitute unused merchandise drawback exception, then, only *the exports* – and not the designated merchandise upon which one bases a drawback claim – would need to fall within a § 3333(a) exception. Defendant insists that the dependant clause modifies the second "merchandise," the "imported merchandise" upon which a duty drawback claim is based. Def.'s Mot. Summ. J. & Resp. Pl.'s Mot. Summ. J. 10-11. This construction would necessitate that *the designated merchandise* fall under one of the exceptions in § 3333(a) to qualify for substitute unused merchandise drawback.

According to conventional grammatical methods of statutory construction, Plaintiff's argument fails. The last antecedent rule instructs that "a limiting clause or phrase . . . should ordinarily be read as modifying only the noun or phrase that it immediately follows." *Barnhart v. Thomas*, 540 U.S. 20, 26 (2003). Since the second, "imported merchandise" immediately precedes the dependant clause, Defendant's reading conforms to the rule, and Merck's does not. Further, as Defendant notes, Congress could have moved the dependant clause to create Merck's interpretation unambiguously.

> [T]he drafters would have moved the limiting clause forward . . . to modify the substitute "merchandise" as follows[:]
> > . . . the exportation to a NAFTA country of merchandise, *other than merchandise described in paragraphs (1) through (8) of*

> *section 203(a) of that Act [19 U.S.C.A. § 3333(a)]*, that is fungible
> with and substituted for imported merchandise shall not constitute
> an exportation for purposes of paragraph 2 [sic].

Def.'s Mot. Summ. J. & Resp. Pl.'s Mot. Summ. J. 13 (third brackets in original).

Nevertheless, both parties separately note, and not without reason, that their opponent's reading of § 1313(j) in conjunction with the § 3333(a) exceptions leads to ambiguous, absurd results and renders impotent portions of the statutory scheme. *See* Pl.'s Mot. Summ. J. 15, 19, 21-28; Def.'s Mot. Summ. J. & Resp. Pl.'s Mot. Summ. J. 14-16; Def.'s Reply 11. Thus, the court must examine the legislative history and administrative regulations, so that it may interpret the statute to give the fullest possible effect and meaning to its language and the intent of Congress. *See Nat'l Lead Co. v. United States*, 252 U.S. 140, 145 (1920); *Cohn & Rosenberger*, 4 Ct. Cust. at 380; *cf. Barnhart*, 540 U.S. at 26 (noting that last antecedent rule "not an absolute and can assuredly be overcome by other indicia of meaning").

## B. Legislative History and Congressional Intent

The legislative history for the NAFTAIA affirms that in amending the duty drawback statutes in 1993, Congress intended to "restrict[] drawback and duty deferral programs between [NAFTA] Parties . . . . except for those categories of goods specifically enumerated" and that Customs' interpretation of the statutes at issue reflects this intent. H.R. Rep. No. 103-361(I), at 39 (1993), *reprinted in* 1993 U.S.C.C.A.N. 2552, 2589. Specifically, the Implementation Act aimed to

> eliminate[] . . . "same condition substitution drawback [substitution unused
> merchandise drawback]" by amending section 313(j)(2) of the Tariff Act of 1930

(19 U.S.C. [§] 1313(j)(2)), thereby eliminating the right to a refund on the duties paid on a dutiable good upon shipment to Canada or Mexico of a substitute good, except for goods described in paragraphs one through eight of section 203(a) [19 U.S.C. § 3333(a)].[9]

*Id.* at 39-40; *see* 139 Cong. Rec. S16092-01, S16098 (daily ed. Nov. 18, 1993) (Statement of The Committee on Finance on S. 1627 The North American Free Trade Agreement Implementation Act (NAFTA)) ("[D]rawback may not be paid on exports to a NAFTA country of merchandise that is fungible with and substituted for imported merchandise.  [The NAFTAIA] eliminates 'same condition substitution' drawback on trade among NAFTA Parties.").  By abolishing "substitution unused merchandise drawback," Congress desired to "remove the trade distorting provisions of the drawback laws . . . between NAFTA countries . . . . [and] ensure that none of the NAFTA countries [became] an 'export platform' for materials produced in other regions of the world."  H.R. Rep. No. 103-361(I), at 40; *see id.*  As legislative history makes amply clear, Congress undoubtedly sought to eliminate nearly all substitute unused merchandise drawback on exports to Mexico and Canada.  Merck cannot reconcile its proposed construction of 19 U.S.C. § 1313(j)(4)(A) with this unambiguous statement of intent.

**C. Administrative Regulations**

Customs' regulations and Headquarters Rulings are consistent with the statutory construction that it advocates in this case, and the court must therefore treat them with substantial

---

[9]With no hint of irony, Plaintiff insists that this paragraph supports its position by implicitly invoking the last antecedent rule and claiming that the clause "except for goods described in paragraphs one through eight of section 203(a)" modifies "substitute good."  *See* Pl.'s Mot. Summ. J. 31.  This reading would allow for § 3333(a) exemptions as long as the exports, and not the designated merchandise upon which one bases a drawback claim, fall within the statute.  Unfortunately for Plaintiff, the last antecedent rule is a cannon of statutory construction and does not apply to legislative history.

deference. 19 C.F.R. § 181.41 establishes the framework for the agency's application of the duty drawback laws modified by the NAFTAIA. Sections 181.42(d) and 181.44 proceed to implement the NAFTA drawback restrictions, and § 181.45 provides for the 19 U.S.C. § 3333(a) exceptions to the general rule. *See* 19 C.F.R. §§ 181.41, 181.42, 181.44, 181.45; *see also* HQ 228209 of Apr. 12, 2002, at *3-4; HQ 227876 of Aug. 21, 2000, at *2-3; HQ 228421 of May 5, 2000; HQ 227272 of May 1, 1997, at *3 ("[W]ith the exceptions specifically provided for in 19 U.S.C. [§] 3333(a)(1) through (8) . . . , substitution drawback under 19 U.S.C. [§] 1313(j)(2) no longer exists for shipments to Canada or Mexico of merchandise imported into the United States."). *See generally* 58 Fed. Reg. 69,460-01, 69,463 (Dec. 30, 1993) (detailing purpose of NAFTA duty drawback regulations).

Since the court finds that Customs' duty drawback regulations reflect Congress' intent in enacting the NAFTAIA, they "should not be disturbed." *Nat'l Lead Co.*, 252 U.S. at 146; *see Barnhart*, 540 U.S. at 26 ("[W]hen the statute 'is silent or ambiguous' we must defer to a reasonable construction by the agency charged with its implementation.") (quoting *Chevron U.S.A., Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837, 843 (1984)); *see United States v. Haggar Apparel Co.*, 526 U.S. 380, 392-94 (1999); *see also* 19 U.S.C. § 1500(b) (charging Customs with power to fix rate of duty applicable to imported goods).

## IV. Conclusion

Though some literal readings of the statutory scheme regulating duty drawback within the NAFTA area can lead to conflicting or absurd results regardless of how one construes the statutes' ambiguous portions, the interpretation reflected in the relevant regulation promulgated by Customs to interpret the statute (and argued by Defendant's brief) most closely conforms to

the Congressional intent outlined in the legislative history. Accordingly, the court finds

Defendant's interpretation of 19 U.S.C. § 1313(j)(4)(A) valid and affirms its denial of Merck's

duty drawback claim. Defendant's motion for summary judgment is granted, and Merck's

motion for summary judgment is denied.


        June 6, 2006                                    /s/ Judith M. Bazilay
Dated:_____                      _____
        New York, NY                                   Judge