# United States Court of Appeals for the Federal Circuit

2006-1538

MERCK & CO., INC.,

Plaintiff-Appellant,

v.

UNITED STATES,

Defendant-Appellee.

John J. Galvin, Galvin & Mlawski, of New York, New York, argued for plaintiff-appellant. Of counsel was Jack D. Mlawski.

Edward F. Kenny, Trial Attorney, International Trade Field Office, Commercial Litigation Branch, Civil Division, United States Department of Justice, of New York, New York, argued for defendant-appellee. With him on the brief were Peter D. Keisler, Assistant Attorney General, Jeanne E. Davidson, Director, and Barbara S. Williams, Attorney in Charge. Of counsel on the brief was Chi S. Choy, Office of Assistant Chief Counsel, International Trade Litigation, United States Customs and Border Protection, of New York, New York.

Appealed from: United States Court of International Trade

Judge Judith M. Barzilay

# United States Court of Appeals for the Federal Circuit

2006-1538

MERCK & CO., INC.,

Plaintiff-Appellant,

v.

UNITED STATES,

Defendant-Appellee.

————————————————

DECIDED:  September 19, 2007

————————————————

Before MAYER, <u>Circuit Judge</u>, PLAGER, <u>Senior Circuit Judge</u>, and LOURIE, <u>Circuit Judge</u>.

LOURIE, <u>Circuit Judge</u>.

Merck & Co., Inc. ("Merck") appeals from the decision of the United States Court of International Trade sustaining the denial by the United States Customs and Border Protection ("Customs") of Merck's claim for drawback under 19 U.S.C. § 1313(j)(2) on Merck's export of substitute, fungible goods to Canada and Mexico.  <u>Merck & Co., Inc. v. United States</u>, 435 F. Supp. 2d 1253 (Ct. Int'l Trade 2006).  Because the trial court correctly ruled that Merck is not entitled to the drawback, we affirm.

BACKGROUND

This appeal involves a claim for a drawback. A drawback is defined as "the refund or remission, in whole or in part, of a customs duty, fee or internal revenue tax which was imposed on imported merchandise under Federal law because of its importation." 19 C.F.R. § 191.2(i). Section 1313(j)(1) of Title 19 provides for a drawback when imported duty-paid merchandise is subsequently exported. Section 1313(j)(2) provides for a drawback when substituted merchandise that is commercially interchangeable with the imported duty-free merchandise is subsequently exported. Section 1313(j)(4)(A), added pursuant to the North American Free Trade ("NAFTA") Implementation Act, mostly eliminates drawback for the type of merchandise listed in § 1313(j)(2)—exported merchandise that is fungible with and substituted for the duty-paid imported merchandise—when that merchandise is exported to a NAFTA country. However, certain types of merchandise set forth in § 3333(a)(1-8) are not subject to the § 1313(j)(4)(A) NAFTA drawback restriction. Those exceptions will be discussed infra.

The relevant provisions of 19 U.S.C. § 1313(j) are as follows, with emphases provided:

19 U.S.C. § 1313. Drawback and refunds

* * *

(j) Unused merchandise drawback

* * *

(2) Subject to paragraph (4), if there is, with respect to imported merchandise on which was paid any duty, tax, or fee imposed under Federal law upon entry of importation, any other merchandise (whether imported or domestic), that—

(a) is commercially interchangeable with such imported

merchandise;

\* \* \*

then, notwithstanding any other provision of law, upon the exportation or destruction of such other merchandise the amount of each such duty, tax, and fee paid regarding the imported merchandise shall be refunded as drawback under this subsection, . . . .

\* \* \*

(4)(A) Effective upon the entry into force of the North American Free Trade Agreement, <u>the exportation to a NAFTA country</u>, as defined in section 2(4) of the North American Free Trade Agreement Implementation Act [19 U.S.C. § 3301(4)], <u>of merchandise that is fungible with and substituted for imported merchandise, other than merchandise described in paragraphs (1) through (8) of section 203(a) of that Act [19 U.S.C. § 3333(a)], shall not constitute an exportation for purposes of paragraph (2)</u>.

By its terms, § 1312(j)(4)(A) generally eliminates drawback for merchandise substituted for the duty-paid imported merchandise and subsequently exported to a NAFTA country. As provided for in § 1313(j)(4)(A), there are eight types of merchandise listed in § 3333(a)(1-8), however, that are not subject to the NAFTA drawback restriction and that therefore qualify as merchandise under § 1313(j)(2) for which drawback can be obtained. In other words, drawback provided for under § 1313(j)(2) is negated for NAFTA countries under § 1313(j)(4)(A) but is rejuvenated by the "other than" clause reciting eight exceptions. The exception relevant to this appeal is § 3333(a)(2), which reads as follows, with the relevant portion emphasized:[1]

---

[1] The other exceptions set forth in § 3333(a) include: (1) a good entered under bond for transportation and exportation to a NAFTA country; (3) a good that is deemed to be exported from the United States, or used as a material in the production of another good that is deemed to be exported to a NAFTA country, or substituted for by a good of the same kind and quality that is used as a material in the production of another good that is deemed to be exported to a NAFTA country, and that is delivered to a duty-free shop, for ship's stores or supplies for ships or aircraft, or for use in a project undertaken jointly by the United States and a NAFTA country and destined to

19 U.S.C. § 3333. Drawback

(a) "Good subject to NAFTA drawback" defined

For purposes of this Act and the amendments made by subsection (b) of this section, the term "good subject to NAFTA drawback" means any imported good other than the following:

* * *

(2) <u>A good exported to a NAFTA country in the same condition as when imported into the United States</u>.

On May 25, 1993, Merck imported 35 kilograms of famotidine[2] ("the duty-paid imported merchandise") to the United States from its manufacturer in Ireland, at a duty rate of 6.9% <u>ad</u> <u>valorem</u>. During July and August 1995, Merck imported an additional 1195 kilograms of famotidine, which, pursuant to the Uruguay Round Trade Agreement, was duty-free.[3] On July 13 and August 4, 1995, Merck exported 35 kilograms ("the exported merchandise") of duty-free imported famotidine to Mexico and Canada.

---

become the property of the United States; (4) a good exported to a NAFTA country for which a refund of customs duties is granted by reason of the failure of the good to conform to sample or specification, or the shipment of the good without the consent of the consignee; (5) a good that qualifies under the rules of origin set out in section 3332 of this title; (6) a good provided for in the subheading 1701.11.02 of the HTS; (7) a citrus product that is exported to Canada; (8) a good used as a material, or substituted for by a good of the same kind and quality that is used as a material, in the production of apparel, or a good provided for in subheading 6307.90.99 (insofar as it relates to furniture moving pads), 5811.00.20, or 5811.00.30 of the HTS, that is exported to Canada and that is subject to Canada's most-favored-nation rate of duty upon importation into Canada.

[2]    Famotidine chemical is formulated into famotidine tablets and is marketed under the trademark PEPCID.

[3]    Under the Uruguay Round Trade Agreement, tariffs on pharmaceutical products were eliminated, effective January 1, 1995.

Although the exported 35 kilograms was not the same material that was imported on May 25, 1993, Merck then filed a claim for drawback seeking a refund of the duties paid for the 35 kilograms of famotidine imported in 1993.  Merck alleged that the exported merchandise was fungible with and substituted for the duty-paid imported merchandise and thus that it was entitled to a drawback under § 1313(j)(2), which permits drawback for such merchandise.  Customs denied Merck's drawback claim, reasoning that § 1313(j)(4)(A) generally prohibits drawback for merchandise fungible with and substituted for the duty-paid imported merchandise when that merchandise is exported to a NAFTA country, unless the merchandise is of the type listed in § 3333(a).  Because Merck's merchandise was exported to Mexico and Canada, and the duty-paid imported merchandise did not meet any of the exceptions in § 3333(a), Customs determined that Merck was not entitled to a drawback.

Merck then filed suit in the Court of International Trade seeking reversal of Customs' decision.  Both parties filed motions for summary judgment.  Merck asserted that its exported merchandise was not subject to the NAFTA drawback restriction in § 1313(j)(4)(A) because it met one of the exceptions in § 3333(a), viz., a "good exported to a NAFTA country in the same condition as when imported."  The government argued that the duty-paid imported merchandise was the basis for the drawback claim, and, under the plain language of § 1313(j)(4)(A), the § 3333(a) exceptions apply to the duty-paid imported merchandise, not to the substituted exported merchandise.  Because the imported duty-paid merchandise was not itself subsequently exported, the government argued that it was not a "good exported to a NAFTA country in the same condition as when imported" under § 3333(a)(2) and therefore was subject to the NAFTA drawback

restriction in § 1313(j)(4)(A). The court agreed with the government and granted its motion for summary judgment.

The trial court first noted that the statutory scheme is "inartfully drafted" because "portions of it lie within the laws governing NAFTA, while other parts are embedded within the statutes on duty drawback." Merck, 435 F. Supp. 2d at 1258. The court then noted that the parties disagreed over the interpretation of the clause in § 1313(j)(4)(A) that provides that the "exportation to a NAFTA country . . . of merchandise that is fungible with and substituted for imported merchandise, other than merchandise described in [][19 U.S.C. § 3333(a)], shall not constitute an exportation" subject to duty drawback. (emphasis added). Merck argued to the court that the "other than merchandise" clause refers to the substituted exported merchandise. The government, on the other hand, argued that the "other than merchandise described in 19 U.S.C. § 3333(a)" clause refers to the duty-paid imported merchandise.

The trial court determined that, applying the last antecedent rule,[4] the term "imported merchandise" that immediately precedes the "other than merchandise" clause modifies that clause. The court therefore adopted the government's interpretation that the "other than merchandise" refers to the duty-paid imported merchandise and that § 1313(j)(4)(A) eliminates drawback for substitute goods exported to a NAFTA country unless the duty-paid imported merchandise is of the type listed in § 3333(a). The court observed, however, that both interpretations lead to "ambiguous, absurd results and renders impotent portions of the statutory scheme." Merck, 435 F. Supp. 2d at 1259.

---

[4] The court, quoting Barnhart v. Thomas, 540 U.S. 20, 26 (2003), stated that the last antecedent rule instructs that "a limiting clause or phrase . . . should ordinarily be read as modifying only the noun or phrase that it immediately follows."

Hence, the court examined the legislative history and administrative regulations pertaining to § 1313(j)(4)(A).

According to the trial court, the legislative history of the NAFTA Implementation Act makes clear that Congress sought to eliminate nearly all drawbacks for substitute unused merchandise exported to Mexico and Canada. The court observed that under Merck's interpretation of the relevant statutory provision, nearly all substituted merchandise exported to Mexico or Canada would be eligible for duty drawback. The court therefore determined that Merck's interpretation of the statute could not be correct. Moreover, the court observed that Customs' regulations and Headquarters Rulings were consistent with the statutory construction that it proposed. The court therefore afforded that interpretation deference. The court concluded that the government's interpretation of § 1313(j)(4)(A) was valid, granted its motion for summary judgment, and denied Merck's motion for summary judgment.

Merck timely appealed, and we have jurisdiction pursuant to 28 U.S.C. § 1295(a)(5).

## DISCUSSION

This court reviews a grant of summary judgment by the Court of International Trade de novo. Int'l Light Metals v. United States, 194 F.3d 1355, 1361 (Fed. Cir. 1999). In reviewing a denial of a motion for summary judgment, "we give considerable deference to the trial court, and will not disturb the trial court's denial of summary judgment unless we find that the court has indeed abused its discretion." Elekta Instrument S.A. v. O.U.R. Scientific Int'l, Inc., 214 F.3d 1302, 1306 (Fed. Cir. 2000).

On appeal, Merck argues, as it did to the trial court, that its exported famotidine,

which is fungible with and was substituted for the duty-paid imported famotidine, is not subject to the NAFTA drawback restriction under § 1313(j)(4)(A) because it is of the type listed in exception § 3333(a)(2), viz., a good "exported to a NAFTA country in the same condition as imported." According to Merck, under the plain language of § 1313(j)(4)(A), the exceptions in § 3333(a) apply to the substituted exported merchandise, not to the duty-paid imported merchandise. Merck argues that its interpretation is supported by § 1313(j)(4)(B), which was added to the statute in 2003 and expressly precludes drawback for a good exported to Chile in the same condition as when imported into the United States. Because no similar express preclusion is present in § 1313(j)(4)(A), Merck argues that Congress intended to permit drawback for such merchandise exported to a NAFTA country. Merck finally argues that the court erred in affording Customs' regulations and Headquarters Rulings deference because the regulations do not address whether the exceptions in § 3333(a) apply to the duty-paid imported or the substitute exported merchandise.

The government responds that the trial court correctly interpreted § 1313(j)(4)(A) as providing that, unless the imported merchandise is of the type listed in § 3333(a), no drawback is permitted for substituted merchandise exported to a NAFTA country. According to the government, the duty-paid imported merchandise was never exported and thus was not "exported in the same condition as when imported" under § 3333(a)(2). Because the duty-paid imported merchandise did not meet any of the exceptions in § 3333(a), the government asserts that § 1313(j)(4)(A) prohibits a drawback. The government further responds that the statement in § 1313(j)(4)(B), which expressly prohibits drawback for substitute goods exported to Chile in the same

condition as imported, should not be read to permit drawback for such merchandise exported to a NAFTA country under § 1313(j)(4)(A). The government argues that § 1313(j)(4)(B) in fact reflects Customs' interpretation of drawback under § 1313(j)(4)(A) and clarifies the statute. The government finally responds that Congress clearly intended to eliminate "same condition" substitute unused merchandise drawback between NAFTA countries. It argues that the legislative history and Customs' regulations are consistent with the court's interpretation of § 1313(j)(4)(A).

We agree with the government that the trial court correctly sustained the denial of Merck's claim for drawback under § 1313(j)(2) in light of § 1313(j)(4)(A). In accordance with sound legal principles, we first consider the statutory language to determine whether it resolves the issue whether Merck's substituted unused merchandise exported to Mexico and Canada is entitled to drawback. The relevant statutory provision, § 1313(j)(4)(A), provides that "the exportation to a NAFTA country . . . of merchandise that is fungible with and substituted for imported merchandise, other than merchandise described in [19 U.S.C. § 3333(a)(1-8)], shall not constitute an exportation for purposes of paragraph (2)." (emphasis added). Under the language of the statute, there is no drawback for merchandise substituted for the imported merchandise and subsequently exported to a NAFTA country, unless the merchandise is of the type listed in § 3333(a). While Merck contends that the "other than merchandise described in" § 3333(a) refers to the exported merchandise, the government argues that that clause refers to the duty-paid imported merchandise.

We conclude that the statutory language is, as the trial court stated, "inartfully drafted" and hopelessly ambiguous. The Court of International Trade applied the last

antecedent rule and determined that the "other than merchandise" clause refers to the imported merchandise. However, we do not agree that the last antecedent rule resolves the issue. Although the term "imported merchandise" does immediately precede the "other than merchandise" clause, the last antecedent rule cannot be applied to render language inconsistent with that with which it is surrounded. The entire context of the clause indicates that it is "exportation of merchandise" that the "other than merchandise" refers to. The clause states that the "exportation . . . of merchandise that is fungible with and substituted for imported merchandise . . . shall not constitute an exportation." It is exportation that is being addressed. The term "imported merchandise" merely explains what the exported merchandise is substituted for, but the imported merchandise is not the subject of the clause. Thus, the last antecedent rule does not apply here. Barnhart, 540 U.S. at 26 (noting that the last antecedent rule is not an absolute rule).

Whatever the interpretation of that "other than" clause, consideration of the other statutory language, however, creates serious ambiguity regarding Congress's intent. For example, § 1313(j)(2) permits drawback for the exportation of substituted goods but provides that it is "subject to paragraph (4)." However, the end of that provision provides that "notwithstanding any other provision of law," drawback is permitted. Thus, while one section of the provision suggests that drawback for substituted merchandise is permitted only subject to paragraph (4), another section suggests that drawback is permitted, irrespective of any other statutory provision. Moreover, § 1313(j)(4)(A) restricts drawback for goods exported to a NAFTA unless the merchandise is of the type described in § 3333(a)(1-8). However, § 3333(a) is entitled "Good subject to NAFTA

drawback" and provides that the term "good subject to NAFTA drawback" means "any imported good other than the following" eight types of merchandise. Thus, § 3333(a) suggests that a good entitled to drawback does not include any of the eight types of listed merchandise, while § 1313(j)(4)(A) provides that any of the goods listed in the eight exceptions are entitled to drawback.

The statutory scheme thus contains one "subject to" clause, one "notwithstanding any other provision" clause, two "other than" clauses, a "shall be refunded" clause, and a "shall not constitute" clause. It is a confusing and inconsistent maze of twists and turns.

However, consideration of a number of various sources including the legislative history, the regulations, and the Headquarters Rulings enables us to ascertain Congress's intent and to affirm the trial court. We first consider the legislative history. See Alaskan Arctic Gas Pipeline Co. v. United States, 831 F.2d 1043, 1046 (Fed. Cir. 1987) ("[I]f the bare language of the statute fails to provide adequate guidance or if a literal interpretation of the statute would lead to an incongruous result, the court must resort to the purpose and legislative history of the statute to determine the intent of Congress in enacting the statute."). The legislative history makes clear that Congress enacted § 1313(j)(4)(A) in order to eliminate nearly all drawback for substitute goods exported to a NAFTA country. For example, the Statement of Administrative Action, accompanying the NAFTA Implementation Act, explains the purpose of each portion of the NAFTA, including the following section involving drawback for unused and substituted merchandise: "Article 303 eliminates, as of the dates of the entry into force of the Agreement, same condition substitution drawback on exports of goods to another

NAFTA country." House Doc., 103-159, Vol. 1, 103d Cong., 1st Session, pp. 1, 20 (emphasis added). Moreover, statements made in the Senate Proceedings further suggest that the purpose in enacting § 1313(j)(4)(A) was to eliminate "same condition" substitution unused merchandise drawback:

> Section 203(c) amends section 313(j) of the Tariff Act of 1930 to provide that, effective immediately, drawback may not be paid on exports to a NAFTA country of merchandise that is fungible with and substituted for imported merchandise. This subsection implements paragraph 2(d) of Article 303, which eliminates "same condition substitution" drawback on trade among the NAFTA parties.

139 Cong. Rec., S16092-01, Congressional Record—Senate, Proceedings and Debates of the 103rd Congress, First Session, November 18, 1993. Additionally, House Report No. 103-361, Nov. 15, 1993, 1993 USCCAN 2552, 2556, 2588, discusses the NAFTA, and states that:

> Subsection(c) eliminates, effective upon entry into force of the Agreement, same condition substitution drawback by amending section 313(j)(2) of the Tariff Act of 1930 (19 U.S.C. 1313(j)(2)) thereby eliminating the right to a refund on the duties paid on a dutiable good upon shipment to Canada or Mexico of a substitute good, except for the goods describe in paragraphs one through eight of section 203(a).

Finally, the NAFTA itself makes clear that drawback on substituted merchandise was to be eliminated; it reads in pertinent part as follows:

> Article 303: Restriction on Drawback and Duty Deferral Programs.
>
> * * *
>
> 2.    No Party may, on condition of export, refund, waive or reduce:
>
> * * *
>
>      (d)    customs duties paid or owed on a good imported into its territory and substituted by an identical or similar good that is subsequently exported to the territory of another Party.

Thus, the legislative history of § 1313(j)(4)(A) makes clear that Congress intended to

eliminate drawback for merchandise substituted for the duty-paid imported merchandise and subsequently exported to a NAFTA country in the same condition as imported. Merck is attempting to obtain drawback on its exported famotidine as a substitute for the imported duty-paid famotidine, which is precisely the type of situation where Congress clearly intended to preclude drawback. Permitting drawback for Merck's exported merchandise, even though fungible with the duty-paid imported merchandise, would thus be contrary to the clear intent of Congress. Hence, Merck's interpretation of the statute cannot be correct.

Customs' regulations and Headquarters Rulings are consistent with the trial court's conclusion. For example, 19 C.F.R. § 181.41 provides as follows:

> Subpart E. Restrictions on Drawback and Duty-Deferral Programs.
>
> This subpart sets forth the provisions regarding drawback claims and duty-deferral programs under Article 303 of the NAFTA and applies to any good that is a "good subject to NAFTA drawback" within the meaning of 19 U.S.C. 3333.

19 C.F.R § 181.42 further provides:

> The following duties or fees which may be applicable to a good entered for consumption in the Customs territory of the United States are not subject to drawback under this subpart:
>
> * * *
>
> > (d) Customs duties paid or owed under unused merchandise substitution drawback. There shall be no payment of such drawback under 19 U.S.C. 1313(j)(2) on goods exported to Canada or Mexico on or after January 1, 1994.

Section 181.42 thus prohibits "unused merchandise substitution" drawback on goods exported to Canada or Mexico on or after January 1, 1994. That regulation is consistent with the legislative history, which indicates that Congress intended to eliminate

drawback for merchandise that is substituted for the duty-paid imported merchandise and exported to a NAFTA country.

Customs' Headquarters Rulings are also consistent with the regulations. For example, one such ruling considered the same issue and stated that "[w]e do not agree that the limitation in [§1313] (j)(4) applies to the substituted merchandise which is not the basis of the drawback claim, but find that the limitation applies to the imported good which is the basis of the drawback claim." HQ 228209. Customs found support for its position in the legislative history. Customs noted that it had taken a similar position in its prior decisions, citing HQ 227272, 227876, 226541. The ruling concludes by stating "[u]nder the facts described, the law does not provide for drawback under 19 U.S.C. § 1313(j)(2), on exports of substituted goods to Canada, unless the imported goods on which the drawback claim is based are described in paragraphs (1) through (8) of 19 U.S.C. § 3333(a)." These regulations and Headquarters Rulings reflect an interpretation of § 1313(j)(4)(A) that is consistent with the legislative history and is entitled to deference.

Merck argues that changes made to the drawback law in order to implement drawback restrictions under the US-Chile Free Trade Agreement support its position that substitution unused merchandise drawback is permitted under § 1313(j)(4)(A). The US-Chile Free Trade Implementation Act amended 19 U.S.C. § 1313(j)(4) by adding paragraph (B), which reads as follows:

(B) Beginning on January 1, 2015, the exportation to Chile of merchandise that is fungible with and substituted for imported merchandise, other than merchandise described in paragraphs (1) through (5) of section 203(a) of the United States-Chile Free Trade Agreement Implementation Act, shall not constitute an exportation for purposes of paragraph (2) [19 U.S.C. § 1313(j)(2)]. The preceding sentence shall not

be construed to permit the substitution of unused drawback under paragraph (2) of this subsection with respect to merchandise described in paragraph (2) of section 203(a) of the United States-Chile Free Trade Agreement Implementation Act.

According to Merck, the sentence at the end of the above provision explicitly prohibits drawback of substituted merchandise described in paragraph 2 of section 203, i.e., a good exported to Chile in the same condition as when imported into the United States. Merck argues that because the added sentence in subsection (B) was not added to subsection (A), Congress intended the new subsection to be interpreted differently from § 1313(j)(4)(A). Specifically, Merck argues that subsection (B) expressly prohibits "same condition unused substitute merchandise" drawback, whereas subsection (A), by not expressly prohibiting it, permits it. We disagree.

First, Merck again argues for an interpretation that directly conflicts with Congress's stated purpose of eliminating drawback for substituted merchandise exported to Mexico or Canada. Second, amending a statute by adding a new subsection without changing the remaining sections of the same statute can be considered a clarification, completely in conformity with the prior interpretation of the unamended sections. Thus, the addition of subsection (B) to § 1313(j)(4), without changing subsection (A), does not mean that the two subsections must be treated differently. We agree with the government that it is more reasonable to assume that the United States Trade Representative, when negotiating the US-Chile Free Trade Agreement, and Congress, when enacting its Implementation Act, adopted Customs' existing interpretation of what constitutes an exportation pursuant to § 1313(j)(4)(A) when it implemented new subsection (B).

In sum, we conclude that the legislative history, the regulations and the

Headquarters Rulings make clear that Congress intended to eliminate drawback for merchandise substituted for duty-paid imported merchandise and exported to a NAFTA country. We agree with the Court of International Trade that the government's interpretation of § 1313(j)(4)(A), as supported by the legislative history and Customs' regulations and Headquarters Rulings, is the correct one. Thus, the court did not err in granting the government's motion for summary judgment, nor abuse its discretion in denying Merck's motion for summary judgment.

## CONCLUSION

For the foregoing reasons, Merck is not entitled to drawback under § 1313(j)(2), on exports of the substituted famotidine to Mexico and Canada.

## AFFIRMED