**Judith A. COHEN, Plaintiff**

v.

**Michael J. ASTRUE, Commissioner of the Social Security Administration, Defendant.**

**Civil Action No. 06–30191–KPN.**

United States District Court, D. Massachusetts.

Oct. 5, 2007.

David P. Engle, Northampton, MA, for Plaintiff.

Karen L. Goodwin, United States Attorney's Office, Springfield, MA, for Defendant.

*MEMORANDUM AND ORDER WITH REGARD TO PLAINTIFF'S MOTION TO REVERSE and DEFENDANT'S MOTION TO AFFIRM THE DECISION OF THE COMMISSIONER (Document Nos. 11 and 14)*

KENNETH P. NEIMAN, Chief United States Magistrate Judge.

This matter is before the court pursuant to 42 U.S.C. § 405(g) which provides for judicial review of a final decision by the Commissioner of the Social Security Administration ("Commissioner") regarding an individual's entitlement to Social Security Disability Income ("SSDI") benefits. Judith A. Cohen ("Plaintiff") claims that the Commissioner's decision denying her SSDI benefits—memorialized in a July 22, 2006 decision by an administrative law judge—is is not supported by substantial evidence and reflects errors of law. Plaintiff has moved to reverse or remand the decision and the Commissioner, in turn, has moved to affirm.

With the parties' consent, this matter has been assigned to the undersigned pursuant to 28 U.S.C. § 636(c) for all purposes, including entry of judgment. For the reasons set forth below, the Commissioner's motion to affirm will be denied and Plaintiff's motion will be allowed to the extent it seeks remand.

### I. STANDARD OF REVIEW

A court may not disturb the Commissioner's decision if it is grounded in substantial evidence. *See* 42 U.S.C. §§ 405(g) and 1383(c)(3). Substantial evidence is such relevant evidence as a reasonable mind accepts as adequate to support a conclusion. *Rodriguez v. Sec'y of Health & Human Servs.*, 647 F.2d 218, 222 (1st Cir.1981). The Supreme Court has defined substantial evidence as "more than a mere scintilla." *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971). Thus, even if the administrative record could support multiple conclusions, a court must uphold the Commissioner's findings "if a reasonable mind, reviewing the evidence in the record as a whole, could accept it as adequate to support his conclusion." *Irlanda Ortiz v. Sec'y of Health & Human Servs.*, 955 F.2d 765, 769 (1st Cir.1991) (citation and internal quotation marks omitted).

▮ The resolution of conflicts in evidence and the determination of credibility are for the Commissioner, not for doctors or the courts. *Rodriguez,* 647 F.2d at 222; *Evangelista v. Sec'y of Health & Human Servs.,* 826 F.2d 136, 141 (1st Cir.1987). A denial of benefits, however, will not be upheld if there has been an error of law in the evaluation of a particular claim. *See Manso–Pizarro v. Sec'y of Health & Human Servs.,* 76 F.3d 15, 16 (1st Cir.1996). In the end, the court maintains the power, in appropriate circumstances, "to enter . . . a judgment affirming, modifying, or reversing the [Commissioner's] decision" or to "remand[ ] the cause for a rehearing." 42 U.S.C. § 405(g).

### II. BACKGROUND

Plaintiff, born on February 5, 1956, resides with her husband in Ludlow, Massachusetts. (Administrative Record ("A.R.") at 194.) The following sections briefly outline Plaintiff's medical treatment and employment history as well as the procedural posture of the case.

### A. *Medical Treatment*

In 2004, Dr. Donald Korb, an optometrist, diagnosed Plaintiff as having severe keratoconus in her left eye. *(Id.)* Keratoconus is a conical protrusion of the cornea caused by thinning of the stroma. *Stedman's Medical Dictionary* 914 (26th ed.1995). The condition causes major changes in the refractive power of the eye,

necessitating frequent changes of eye glasses. Contact lenses may provide better vision correction; corneal transplant surgery may be necessary if vision with contacts is inadequate, contact lenses are not tolerated, or a corneal scar is present. *The Merck Manual* Section 8, Chapter 96, 722 (17th ed.1999).

In Plaintiff's case, keratoconus has caused her to have "significant glare, distortion, blurred vision and photo phobia." (A.R. at 173.) Plaintiff has attempted wearing a patch over her left eye, contacts, and sunglasses to alleviate the discomfort associated with the condition, but none of these measures have proved effective. (A.R. at 174.) Plaintiff has also been evaluated by Dr. Berger, an ophthalmologist, and her records have been reviewed by doctors connected with the state's Disability Determination Service ("DDS"), Dr. Hollis Coblentz and ophthalmologists Drs. Girgis and Sebestyen. The findings of the various doctors are outlined below, as are additional pertinent facts.

### 1. *Dr. Korb*

The earliest document concerning Plaintiff's treatment by Dr. Korb is dated November 9, 2004, at which time he diagnosed Plaintiff with severe keratoconus in her left eye. (A.R. at 169.) Dr. Korb noted that the only treatment available to Plaintiff was keratoplaty (corneal transplant) and that Plaintiff should consider that option. (A.R. at 170.) However, in July of 2005, Dr. Korb indicated that the prognosis for keratoplaty was "not favorable" for Plaintiff. (A.R. at 172.)

Dr. Korb also presented Plaintiff with a list of other options she might employ to alleviate her symptoms, including patching the left-eye or wearing dark sunglasses to minimize the distortion, glare, and photo phobia. *(Id.)* Dr. Korb reported, however, that Plaintiff complained of vertigo when she attempted to patch the left-eye and that wearing dark sunglasses did not provide her with the vision necessary for vocational work. *(Id.)* He concluded that Plaintiff "is essentially disabled from any vocational situation requiring vision." (A.R. at 175.)

### 2. *Dr. Berger*

Dr. Korb referred Plaintiff to Dr. Berger for an ophthalmological examination in February of 2005. (A.R. at 144.) Dr. Berger conducted the examination on September 16, 2005. (A.R. at 145). According to Plaintiff, Dr. Berger informed her that she would not be a suitable candidate for keratoplaty because the effects of the surgery only last for ten years and that she was too young for that to be a permanent solution to her problem. (A.R. at 42.) The DDS requested the records of Dr. Berger on September 19, 2005. (A.R. at 179.)[1]

### 3. *DDS Doctors*

Dr. Girgis reviewed Plaintiff's records in December of 2004 and concluded that, because the keratoconus could be corrected by a keratoplaty, the condition was not severe. (A.R. at 178.) The following October, Dr. Hollis Coblentz, an optometrist, also reviewed Plaintiff's records, but requested that the file be reviewed by Dr. Sebestyen, an ophthalmologist, because she was unfamiliar with keratoconus when associated with severe pain. (A.R. at 184–86.) After reviewing the record, Dr. Sebestyen concluded that, because Dr. Ber-

---

1. Unfortunately, what the DDS has attributed to Dr. Berger bears no proof of who performed the examination or when it was performed. (A.R. at 180). The only legible items are Plaintiff's name, the visual acuity of both eyes, and a diagnosis of keratoconus in the left eye. *(Id.)*

ger found that Plaintiff had good vision in her right eye, her condition was not severe. (A.R. at 181–82.) Based on this assessment, Dr. Coblentz too decided that Plaintiff's impairment was not severe. (A.R. at 186.)

### B. *Employment History*

Plaintiff is a college graduate with a four-year degree in computer systems. (A.R. at 114.) She was employed as a systems analyst for an insurance company from July of 1987 to November of 2001 when her position was terminated as part of a reduction in force. (A.R. at 25, 111.) Although Plaintiff then attempted to work as a receptionist and substitute teacher, she claims that both positions ended quickly due to the keratoconus. (A.R. at 26.) Plaintiff then stopped working. *(Id.)*

### C. *Procedural History*

Plaintiff applied for SSDI benefits on October 27, 2004, alleging the onset of her disability as of January 1, 2002. (A.R.88–92.) Her application was denied initially and upon reconsideration. (A.R.55–57, 69–71.) Plaintiff then requested and was granted a hearing before an administrative law judge ("ALJ"). (A.R. at 72.)

The hearing was held on June 21, 2006. at which time a vocational expert testified in response to three hypothetical questions posed by the ALJ. (A.R. at 48–50.) The first considered objective determinations regarding Plaintiff's condition and asked whether she could perform her past work or, for that matter, any other work. (A.R. at 48.) The vocational expert responded that Plaintiff could not perform her prior work and that no job could be performed by her insofar as the hypothetical concerned "simple tasks" only. (A.R. at 49.) In answer to a second hypothetical, in which the ALJ removed the factor regarding "simple tasks," the vocational expert

stated that Plaintiff would be able to perform some social aide work in situations where she could control the lighting. (A.R. at 149–50.) In a final hypothetical, the ALJ asked the vocational expert to consider the same limitations as in the second, but added as a factor chronic pain, which would require an absence from work at least forty percent of the time. (A.R. at 50.) The vocational expert stated in response that such an individaul would not be able to maintain full-time employment. *(Id.)*

After reviewing the evidence of record, the ALJ concluded that Plaintiff was not disabled. (A.R. at 13–17.) Plaintiff's request for review by the Appeals Council was denied on September 22, 2006, (A.R. at 5–9), thereby making the ALJ's decision the final decision of the Commissioner. *See* 20 C.F.R. §§ 416.1455, 416.1481 (2007).

### III. DISCUSSION

An individual is entitled to SSDI benefits if, among other things, she has an insured status and, if prior to its expiration, she was under a disability. *See* 42 U.S.C. § 423(a)(1)(A) and (E). For present purposes, Plaintiff's insured status is not at issue.

### A. DISABILITY STANDARD AND THE ALJ'S DECISION

The Social Security Act ("the Act") defines disability, in part, as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). An individual is considered disabled under the Act

only if [her] physical or mental impairment or impairments are of such severity that [s]he is not only unable to do [her] previous work but cannot, consid-

ering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which [s]he lives, or whether a specific job vacancy exists for [her], or whether [s]he would be hired if [s]he applied for work.

42 U.S.C. § 423(d)(2)(A). *See Barnhart v. Thomas,* 540 U.S. 20, 25, 124 S.Ct. 376, 157 L.Ed.2d 333 (2003).

In determining disability, the Commissioner follows the five-step protocol described by the First Circuit as follows:

First, is the claimant currently employed? If [s]he is, the claimant is automatically considered not disabled.

Second, does the claimant have a severe impairment? A "severe impairment" means an impairment "which significantly limits the claimant's physical or mental capacity to perform basic work-related functions." If [s]he does not have an impairment of at least this degree of severity, [s]he is automatically considered not disabled.

Third, does the claimant have an impairment equivalent to a specific list of impairments contained in the regulations' Appendix 1? If the claimant has an impairment of so serious a degree of severity, the claimant is automatically found disabled.

Fourth, .... does the claimant's impairment prevent [her] from performing work of the sort [s]he has done in the past? If not, [s]he is not disabled. If so, the agency asks the fifth question.

Fifth, does the claimant's impairment prevent [her] from performing other work of the sort found in the economy? If so, [s]he is disabled; if not, [s]he is not disabled.

*Goodermote v. Sec'y of Health & Human Servs.,* 690 F.2d 5, 6–7 (1st Cir.1982).

In the instant case, the ALJ found as follows with respect to these questions: that Plaintiff had not engaged in substantial gainful activity since the alleged onset of her disability (question one); and that Plaintiff had a medically determinable impairment, left sided keratoconus, but that it was not severe (question two). As a result, the ALJ concluded, without going past question two, that Plaintiff was not under a disability.

B. *ANALYSIS OF PLAINTIFF'S CHALLENGE TO THE ALJ'S DECISION*

▆ Plaintiff's challenge to the ALJ's decision boils down to her claim that the ALJ's finding at step two of the five-step protocol, *i.e.,* that Plaintiff's keratoconus was not "severe," is not based on substantial evidence and reflects errors of law. An impairment is "severe" if it significantly limits an individual's physical or mental ability to do basic work activities such as walking, standing, hearing, seeing, speaking, understanding, responding appropriately to supervision and dealing with changes in a work setting. *See* 20 C.F.R. § 404.1521 (2007).

▆ Plaintiff asserts that her keratoconus is not so slight as to have been deemed non-severe. The court agrees. All that is required of a claimant at step two of the analysis is a "de minimis" showing of severity. *McDonald v. Sec'y of Health & Human Servs.,* 795 F.2d 1118, 1123 (1st Cir.1986). Finding an impairment non-severe is only appropriate where the condition is so slight that it cannot feasibly have more than a minimal impact on an individual's ability to work, thereby screening out groundless claims. *Id.* Plaintiff's claim is hardly groundless. As reported by Plaintiff's optometrist, Dr. Korb, the symptoms of her keratoconus included "significant glare, distortion,

blurred vision and photo phobia." (A.R. at 173.) He also indicated that these symptoms are complicated by dry eyes, making it impossible for her to wear contact lenses. (A.R. at 169.) The combination of these conditions, in the court's opinion, was more than sufficient to require a finding of severity.

The ALJ's finding of non-severity is premised on two errors, namely, finding that Dr. Korb based his opinion solely on Plaintiff's subjective statements, thereby ignoring the objective evidence of record, and, in turn, relying almost exclusively on Plaintiff's subjective testimony, testimony the ALJ found not credible. Granted, not everything in Dr. Korb's report constitutes objective medical evidence. Nonetheless, he provided more than enough objective evidence to meet the *de minimus* standard of step two. For example, Dr. Korb determined that through quantitative findings that the vision in her left eye is "severely distorted" and verified that the vision in her right eye is distorted by "multiple halos and glare phenomena." (A.R. at 175.) As an acceptable medical source, Dr. Korb's findings should be been given due consideration. *See* 20 C.F.R. §§ 404.1513(a)(3) (2007).

■ Concomitantly, it was also error for the ALJ to place as much emphasis as he did on Plaintiff's subjective testimony when determining the severity of her keratoconus. To be sure, as the Commissioner notes, Social Security Ruling 96–3 provides that a severity determination involves an "informed judgment" about the limitations and restrictions imposed by a condition on a claimant's physical and mental ability to do basic work activities, thereby calling into question the credibility of the claimant's testimony. In addition, as the Commissioner also asserts, an administrative law judge is not required to take a claimant's subjective allegations at face value,

*see Bianchi v. Sec'y of Health & Human Servs.*, 764 F.2d 44, 45 (1st Cir.1985); *Burgos Lopez v. Sec'y of Health & Human Servs.*, 747 F.2d 37, 40 (1st Cir.1984), and credibility determinations are usually left to the administrative law judge, *see Dupuis v. Sec'y of Health & Human Servs.*, 869 F.2d 622, 623 (1989).

■ SSR 96–3p, however, places greater emphasis on the objective medical evidence of record. Here, as described, there was sufficient medically determinable evidence that Plaintiff's impairment could produce the pain and discomfort she claims. That objective medical evidence, which the ALJ appears to have discounted if not ignored, requires a finding that Plaintiff's condition meets the severity standard. Of course, a finding of " '[s]everity' is not equivalent to a finding of 'disability' under the ... Act." 20 C.F.R. §§ 404.1520, 416.920 (2007). Accordingly, the court will remand the case so that the ALJ can address the remaining steps, as applicable, in the five-step analysis.

That being said, the court wishes to address two other issues raised by the parties. First, for her part, Plaintiff asserts that the only hypothetical which resulted in an adverse finding was created by the vocational expert, not the ALJ, and was not based on the medical record. Given the fact that, on remand, the ALJ must begin at the third step of the analysis, the court need not address this claim of error. On remand, of course, the ALJ's ultimate decision cannot be predicated on hypothetical facts that fail to reflect the medical record. *See Arocho v. Sec'y of Health & Human Servs.*, 670 F.2d 374, 375 (1st Cir. 1982) (vocational expert's testimony is relevant only to the extent it responds to hypothetical situations reflecting the medical record); *Coggon v. Barnhart*, 354 F.Supp.2d 40, 61(D.Mass.2005) (administrative law judge must base hypothetical

on substantially supported assessment of claimant's functional limitations) (citing *Rose v. Shalala*, 34 F.3d 13, 19 (1st Cir. 1994)).

Second, the Commissioner asserts in turn that Plaintiff cannot be considered disabled because she refused a "prescribed" corneal transplant. *See Ortiz v. Sec'y of Health & Human Servs.*, 955 F.2d 765, 770 (1st Cir.1991) (in order to qualify for benefits, a claimant must follow prescribed treatment); *Tsarelka v. Sec'y of Health and Human Servs.*, 842 F.2d 529, 534 (1st Cir.1988) (same) (citing 20 C.F.R. § 404.1530(a),(b)). Those assertions, however, are not at all clear from the record. Dr. Korb did state that he discussed the option with Plaintiff, but he also stated that the prognosis was "not favorable" with respect to this option. (A.R. at 172–73.) Plaintiff, too, testified that Dr. Berger informed her that she was not a good candidate for such surgery due to her age. Unfortunately, Dr. Berger's letter is hardly legible. *See* footnote 1 *supra.* Obviously, the issue needs to be explored further on remand. In this vein, the ALJ, on remand, might do well to consult a medical advisor, an ophthalmologist; although the ALJ was certainly entitled to consider the reports of the DDS doctors, the record suggests that they were largely unfamiliar with Plaintiff's condition.

## IV. CONCLUSION

For the reasons stated, the Commissioner's motion is DENIED and Plaintiff's motion is ALLOWED to the extent it seeks a remand. The matter is hereby remanded for a rehearing consistent with this opinion.

IT IS SO ORDERED.